# APPENDIX A to NEC Corp.'s Opening Claim Construction Brief - Additional 112 6 Terms

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **WSOU Investments, LLC d/b/a Brazos Licensing and Development**, <br><br> Plaintiff, <br><br> v. <br><br> **NEC Corporation**, <br><br> Defendant. | Case No.: 6:20-cv-00923-ADA <br> Case No.: 6:20-cv-00924-ADA <br> Case No.: 6:20-cv-00925-ADA <br> Case No.: 6:20-cv-00926-ADA <br> Case No.: 6:20-cv-00927-ADA <br><br> **Jury Trial Demanded** |

## APPENDIX A TO
## DEFENDANT NEC CORPORATION'S OPENING CLAIM CONSTRUCTION BRIEF REGARDING ADDITIONAL § 112, ¶ 6 TERMS

Defendant NEC Corporation ("NEC") respectfully submits this appendix and supplemental argument regarding the construction of additional claim terms asserted by WSOU that are governed by 35 U.S.C. § 112, ¶ 6. Specifically, this appendix discusses the additional § 112, ¶ 6 terms that are not included within the 16 terms that the Parties have agreed to brief and have heard at the *Markman* hearing set for November 2021.

NEC again acknowledges the Court's authority to set reasonable limits on the number of terms to be construed during the *Markman* process, as NEC stated when the Parties provided their submissions about the number of claim terms for the *Markman* hearing. NEC does not dispute that the Court has limited the upcoming *Markman* hearing to 16 terms, or its authority to do so. To that end, NEC has selected, briefed, and presented for argument at the upcoming *Markman* hearing the sixteen terms most likely to resolve, or at least narrow, the disputed issues in these five cases. These sixteen terms include indefinite § 112, ¶ 6 terms from the asserted '213 patent. If the Court agrees with NEC that these terms are, indeed, indefinite, then there should be no need to further reach the additional issues discussed in this appendix for at least for the '213 patent.

Nonetheless, NEC's understanding of the statute, 35 U.S.C. § 112, ¶ 6, and of related mandatory precedent and law, is that absent any mootness due to other claim constructions or substantive rulings, all terms that are governed by § 112, ¶ 6 must be construed.  *E.g.*, *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000).  This includes in particular those terms that recite "means for" and are subject to the presumption that § 112, ¶ 6 applies.  Further, WSOU's asserted claims of the '213 and '017 patents include additional claim terms that are subject to § 112, ¶ 6, but are not part of the sixteen terms presented for construction under the Court's *Markman* hearing limit.  These additional § 112, ¶ 6 terms are *sui generis* and are not amenable to any plain and ordinary meaning.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) (observing that, *even if* the court determines a claim term has the "plain and ordinary meaning," it "may be inadequate" when "reliance on the term's 'ordinary' meaning does not resolve the parties' dispute").  The Federal Circuit has affirmed that terms subject to § 112, ¶ 6 must be construed and cannot be presented to the jury on any plain and ordinary meaning.  *Kemco*, 208 F.3d at 1360; *see also AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001) ("It is critical for trial courts to set forth an express construction of the material claim terms in dispute, in part because the claim construction becomes the basis of the jury instructions, should the case go to trial.").  Indeed, if this case proceeds to trial, then the jury must be instructed on the construction of each such § 112, ¶ 6 term, including of its specified function and its corresponding structure.  Doing otherwise would improperly submit this issue as a question of fact to the jury, instead of as a question of law to the Court, and be legal error.  *See, e.g.*, *O2 Micro*, 521 F.3d at 1362–63 (remanding to the district court to adjudicate the parties' dispute regarding the proper scope of the claim term "only if").

NEC further respectfully submits that any procedural limits on the number of claim terms for construction for the *Markman* hearing cannot supersede the substantive requirement to construe

each § 112, ¶ 6 term—but NEC certainly respectfully acknowledges the Court's inherent authority to manage its docket and schedule, including to forego construction of additional § 112, ¶ 6 terms until that must be done, such as when the jury requires instruction on their meaning.  Indeed, if NEC does not propose constructions and argument for these claim terms, then it risks waiver or forfeiture of any such constructions.  *See, e.g.*, *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) ("Even if Lazare were correct that the parties' disagreement concerned the scope of the limitation, Lazare waived this argument by not raising it before the district court.").

WSOU has asserted that § 112, ¶ 6 terms may be accorded their plain and ordinary meaning, do not always require construction, and cannot be construed if doing so would exceed the Court's procedural limits on the number of terms to be construed.  NEC disagrees, and believes it is obligated to present for construction all § 112, ¶ 6 terms, with the Court then exercising its broad discretion to decide when to construe these terms, and whether doing so may become moot in light of other substantive rulings.  To date, WSOU has not provided any legal authority for its position that the substantive requirements of § 112, ¶ 6 must give way to procedural limits on how many claim terms are subject to construction in a patent case, nor is NEC aware of any such authority.

For the foregoing reasons, including to avoid any assertion that NEC has waived or forfeited its positions on these additional § 112, ¶ 6 terms, NEC therefore respectfully submits this appendix and supplemental argument.  The attached pages present NEC's positions on the remaining terms subject § 112, ¶ 6 from the '213 and '017 patents.  Notably, this submission is limited **solely** to § 112, ¶ 6 terms.  In light of the Court's sixteen-term limit for the upcoming *Markman* hearing, NEC **does not** intend to seek leave to argue any of these additional § 112, ¶ 6 terms at that hearing.  Nor does NEC assert or expect that WSOU need respond to this appendix and NEC's constructions of these additional § 112, ¶ 6 terms at this time, including not having to

do so in WSOU's responsive claim construction brief.  Again, resolution of the sixteen terms presented in the Court's allotted limits for the *Markman* hearing may moot the need to resolve many of the additional § 112, ¶ 6 issues set forth in the following pages (*e.g.*, if one term in a given claim is found to be indefinite, the entire claim is invalid and no other terms in that claim may require resolution at this time).  And, if it does become apparent that any of these additional § 112, ¶ 6 issues need to be addressed (e.g., if the case is to be tried), NEC will not oppose WSOU being granted leave to respond to this appendix and its additional issues at a time and in a manner instructed by the Court.

Therefore, NEC respectfully submits the attached appendix of additional briefing and associated expert declaration on these additional § 112, ¶ 6 terms.  NEC further respectfully requests that if these issues have not been mooted before then, that the Court enter an Order construing these terms before the case is presented to any jury at trial.

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   EXPERT EVIDENCE ......................................................................................... 1

III.  U.S. PATENT NO. 8,041,017 (CASE NO. 6:20-CV-925-ADA) .................... 1

     A.     Additional Terms Subject to 35 U.S.C. § 112, ¶ 6............................... 1

          1.     "Detecting means" (claim 8).................................................... 1

          2.     "Answer detecting means" (claim 8) ....................................... 3

IV.  U.S. PATENT NO. 8,103,213 (CASE NO. 6:20-CV-926-ADA) .................... 5

     A.     Additional Terms Subject to 35 U.S.C. § 112, ¶ 6............................... 5

          1.     The additional indefinite "means for …" § 112, ¶ 6 terms of asserted claims 22 and 26 ........................................................ 5

          2.     The indefinite "computer program code configured to …" § 112, ¶ 6 terms of asserted claims 8 and 24 ....................................... 22

          3.     The indefinite "the processor being configured to …" § 112, ¶ 6 terms of asserted claim 25 ..................................................... 25

## TABLE OF AUTHORITIES

**Page**

CASES

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
   521 F.3d 1328 (Fed. Cir. 2008) ..............................................................................27

*Bell N. Rsch., LLC v. Coolpad Techs., Inc.*,
   Case No.18-CV-1783, 2019 WL 3766688 (S.D. Cal. Aug. 9, 2019) ..................................5, 7

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*,
   382 F. Supp. 3d 586 (E.D. Tex. May 10, 2019).......................................................24

*Digital Retail Apps, Inc. v. H-E-B, LP*,
   Civil No. 6-19-CV-00167, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020) ..........................2, 6

*Dyfan, LLC v. Target Corp.*,
   W-19-CV-00179, 2020 WL 8617821 (W.D. Tex. Nov. 25, 2020)....................................24, 27

*Function Media v. Google, Inc.*,
   708 F.3d 1310 (Fed. Cir. 2013).............................................................................25

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
   344 F.3d 1205 (Fed. Cir. 2003)............................................................................2

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*,
   248 F.3d 1303 (Fed. Cir. 2001)........................................................................2, 3, 6

*Net MoneyIn, Inc. v. Verisign, Inc.*,
   545 F.3d 1359 (Fed. Cir. 2008)............................................................................27

STATUTES

35 U.S.C. § 112, ¶ 6 ........................................................................................ passim

## I.      INTRODUCTION

This Appendix A provides NEC's claim construction arguments for the following additional § 112, ¶ 6 claim terms that are not being briefed as part of the sixteen terms to be argued at the upcoming November 2021 *Markman* hearing.  For brevity, NEC refers the Court to its opening claim construction brief, to which this appendix is attached, for its discussion of the applicable law, as well as for an introduction to and overview of the asserted U.S. Patent Nos. 8,041,017 ("the '017 patent") and 8,103,213 ("the '213 patent") discussed herein.

## II.     EXPERT EVIDENCE

For the claim terms discussed in this Appendix A that are subject to pre-AIA 35 U.S.C. § 112, ¶ 6, but not part of the 16 claim terms for the upcoming *Markman* hearing, NEC submits herewith supplemental expert declaration of Dr. Matthew Shoemake (hereafter, "Shoemake Supp. Decl.").  The Shoemake Supplemental Declaration is attached as Appendix B to NEC's opening claim construction brief, and discusses these additional § 112, ¶ 6 terms in this Appendix A.

## III.    U.S. PATENT NO. 8,041,017 (CASE NO. 6:20-CV-925-ADA)

### A.      Additional Terms Subject to 35 U.S.C. § 112, ¶ 6

#### 1.      "Detecting means" (claim 8)

| NEC's Construction | WSOU's Construction |
|---|---|
| Governed by 35 U.S.C. § 112, ¶ 6. | Governed by 35 U.S.C. § 112, ¶ 6. |
| Function: "detecting that the received first call is an emergency call" | Function: "detecting that the received first call is an emergency call" |
| Structure: For example, step 102 of Fig. 2, and the corresponding portions of the specification at 9:15-17, node 30 of Fig. 1 and the corresponding portions of the specification at 5:41-48, and equivalents thereof. | Structure/material/acts: For example, step 102 of Fig. 2, and the corresponding portions of the specification at 9:15-17, node 30 of Fig. 1 and the corresponding portions of the |

| | specification at <u>4:62-5:40 and</u>[1] 5:41-48, and equivalents thereof. |

Both Parties agree this term is governed by § 112, ¶ 6 and further agree on the claimed function.  WSOU's identification of alleged corresponding structure, however, is overbroad and improperly includes structures or materials not clearly linked to the claimed function.

"A 'structure disclosed in the specification is "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.'"  *Digital Retail Apps, Inc. v. H-E-B, LP*, 2020 WL 376664, at *3 (W.D. Tex. Jan. 23, 2020) (Albright, J.) (quoting *Medtronic, Inc. v. Advanced Cardiovascular Sys.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001)).  "The focus of the 'corresponding structure' inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is 'clearly linked or associated with the [recited] function.'"  *Id.* (quoting *Medtronic*, 248 F.3d at 1311).

In *Medical Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205 (Fed. Cir. 2003), the Federal Circuit declined to include "software" identified in the specification as corresponding structure for converting images into a selected digital format because "there is no evidence that one of skill in the art would perceive a clear link between software and the [recited] function" based on the disclosure in the specification or prosecution history.  *Id.* at 1216.  Similarly, in *Medtronic*, the Federal Circuit declined to include as additional corresponding structure multiple structures disclosed in the patent and "definitely capable of performing the function recited" but nevertheless not clearly linked or associated to that

---

[1] Underlining reflects only differences from NEC's proposed structure.  NEC originally identified "the network access node serving the terminal used by the calling party, as disclosed at 5:37-48, and equivalents thereof," but conformed its proposal to simplify the issues for the court.

particular function by the specification or prosecution history.  248 F.3d 1303, 1312 (Fed. Cir. 2001).

Here, the Parties agree that the following is corresponding structure:

> Accordingly, when the terminal 10 is used to place an emergency call (e.g., by dialing 9-1-1 in the United States of America or another emergency telephone number or code as may be the case in other countries), the node 30 serving the terminal 10 recognizes the call as an emergency call, and the call is routed in the usual manner over the network 20 to a designated PSAP 40, e.g., one serving the geographic area in which the terminal 10 is located.

('017 patent at 5:41–48.)  As this passage makes clear, it is the "node 30" that "recognizes the call as an emergency call."  Therefore, the corresponding structure for the detecting means is the network access node serving the terminal used by the calling party.

WSOU's remaining specification cites are not clearly linked to the agreed function of "detecting that the received first call is an emergency call."  In particular, WSOU designates a general description of terminal 10, network 20, and node 30 without any link to a "received first call" or "detect[ing] that the received call is an emergency call."  Nothing clearly links terminal 10 to "detecting that the received first call is an emergency call," and it would be nonsensical to claim that the terminal placing the call also *receives* the call to detect that it is an emergency call.  Moreover, while WSOU's extraneous disclosure describes certain embodiments of "network access node 30," it does not clearly link any particular aspect, component, or module of node 30 to the claimed function.  Accordingly, this additional passage is not corresponding structure.

### 2.    "Answer detecting means" (claim 8)

| NEC's Construction | WSOU's Construction |
|---|---|
| Governed by 35 U.S.C. § 112, ¶ 6. <br><br> Function: "determining whether or not the third party answers the second call" | Governed by 35 U.S.C. § 112, ¶ 6. <br><br> Function: "determining whether or not the third party answers the second call." |

| Structure: For example, step 120 of Fig. 2, node 30 of Fig. 1 and the corresponding portions of the specification at 9:60-61, and equivalents thereof. | Structure/material/acts: For example, step 120 of Fig. 2, and the corresponding portions of the specification at 9:60-61 and 10:4-6, node 30 of Fig. 1 and the corresponding portions of the specification at 7:8-:8:55,[2] and equivalents thereof. |
|---|---|

Both Parties agree this term is governed by § 112, ¶ 6 and further agree on the claimed function. WSOU's identification of alleged corresponding structure, however, is overbroad and includes structures or materials not clearly linked to the claimed function.

Here, the Parties agree that the following is corresponding structure:

> Thereafter, at decision step 120, the node 30 detects or otherwise determines if the called third party answers the call.

('017 patent at 9:60–61), *i.e.*, it is the "node 30" that "detects or otherwise determines if the called third party answers the call." Therefore, the corresponding structure for the detecting means is the network access node serving the terminal used by the calling party.

The remainder of WSOU's specification citations are not clearly linked to the agreed function. In particular, WSOU identifies two additional passages as disclosing corresponding structure. First, WSOU cites the following text:

> As illustrated in FIG. 2, if it is determined at step 120, that the call has been answered by the third party, then the process continues to step 124.

(*Id.* at 10:4–6.) This sentence, however, is in passive voice and discloses no structure for the answer detecting means. The second passage WSOU cites contains nearly two columns of text, but "determine" appears only three times in that passage, and each time as whether "some

---

[2] Underlining reflects only differences from NEC's proposed structure. NEC originally identified "the network access node serving the terminal used by the calling party, as disclosed at 9:60-61, and equivalents thereof," but conformed its proposal to simplify the issues for the court.

4

*determine* [*sic*] time limit has not expired"—not "determining whether or not the third party answers the second call."  There is no clear link of this lengthy passage to the claimed function. *Cf. Bell N. Rsch., LLC v. Coolpad Techs., Inc.*, 2019 WL 3766688, at *6 (S.D. Cal. Aug. 9, 2019) (declining to "scour" plaintiff's "absurdly overinclusive designation" to "locate, or otherwise ascertain from the blanket proffer made by Plaintiff what structure" is disclosed to provide the recited function).  It contains nothing more than vague references to whether the third party answers the call.  (*See, e.g.*, '017 patent at 7:11–16 ("Suitably, if the third party's line is busy or they do not answer, then the node 30 repeatedly places the third party call until a desired result is achieved (e.g., the call is answered and/or the third party is joined to the emergency call)….").)  At most, this passage discloses that node 30 may *place* calls to successive third parties until a third party answers the call, but it does not once identify or clearly link a particular structure for "*determining* whether or not the third party answers the second call."

WSOU's proposal includes passages not clearly linked to the claimed function, and because the only corresponding structure is the network access node serving the terminal used by the calling party, WSOU's construction is overbroad and NEC's construction should be adopted.

**IV.    U.S. PATENT NO. 8,103,213 (CASE NO. 6:20-CV-926-ADA)**

**A.    Additional Terms Subject to 35 U.S.C. § 112, ¶ 6**

**1.    The additional indefinite "means for …" § 112, ¶ 6 terms of asserted claims 22 and 26**

The Parties agree that all of the following additional "means for" terms are subject to § 112, ¶ 6, as well as on the function of each of these terms.  However, each of these terms is indefinite for the specification's failure to disclose clearly-linked, sufficient corresponding structure, as NEC explains below.  Specifically, for each term, the specification fails to clearly

link any hardware, software, algorithm, computer program code, instructions, special purpose processor, or other structure that is sufficient to perform the recited function.  This is the reason that NEC asserts that every "means for" claim term discussed below is indefinite.

Because WSOU has proposed corresponding structure from the specification for each of these terms, NEC's discussion focuses on why WSOU's proposed "structure/material/acts" is neither clearly linked to performing the specified function by the specification, nor sufficient to do so.  For every single "means for" term and its function, WSOU has collectively proposed the following consolidated structure or select portions of this structure:[3]

| **WSOU's Proposed Corresponding Structure** |
|---|
| **For each "means for" term in Sections IV.A.1 (a)–(h),** *infra*: <br><br> Structure/material/acts: For example, [apparatus A (1300) or B (1302) and certain portions of steps 1–8 of Fig. 13], communications module 230 of Fig. 2, memory 330 and processor 300 of Figs. 3, 7A, 8A, 9A, or 11, software-defined radio module 1102 and software modules 1110-1118 of Fig. 12, and steps 1406-1412 of Fig. 14A, and the corresponding portions of the specification at 6:17-30, 6:50-7:22, 8:60-9:5, 17:8-52, 18:4-60, 19:62-20:4, 21:1-3, and 21:15-42, and equivalents thereof. |

As discussed below, the above proposed structure by WSOU is not clearly-linked or sufficient to perform any of the specified functions for each of these "means for" terms.  "A 'structure disclosed in the specification is "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.'" *Digital Retail*, 2020 WL 376664, at *3 (quoting *Medtronic*, 248 F.3d at 1311).  "The focus of the 'corresponding structure' inquiry is not merely whether a structure is capable of performing the

---

[3] NEC has consolidated WSOU's proposed structure for each of the claim terms here for brevity and ease of discussion.  Further, WSOU's proposed structure for each "means for" term is substantially the same, with the exception certain steps and text of Figure 13.

recited function, but rather whether the corresponding structure is 'clearly linked or associated with the [recited] function.'" *Id.* (quoting *Medtronic*, 248 F.3d at 1311).

Further, the Court is not required to take upon itself WSOU's lengthy specification citations in an attempt to assess what, if any, of them is actually linked to performing the specified § 112, ¶ 6 function, or sufficient to do so. *Cf. Bell*, 2019 WL 3766688, at *6 (declining to "scour" plaintiff's "absurdly overinclusive designation" to "locate, or otherwise ascertain from the blanket proffer made by Plaintiff what structure" is disclosed to provide the recited function).

**(a)**    **"means for initiating an inquiry from the apparatus to at least one other apparatus" (claim 22)**

This phrase appears as element [22.a] of claim 22. The Parties agree that the specified function for this § 112, ¶ 6 term is "receiving remote characteristic information into the apparatus." WSOU proposes that the corresponding structure is, in part:

> Structure/material/acts: For example, apparatus A (1300) and process 1 of Fig. 13, and the corresponding portions of the specification at 19:62-20:4, and equivalents thereof.

This was WSOU's initial proposal presented on August 5, 2021—before WSOU finally conceded that all of the "means for" terms were governed by § 112, ¶ 6. (*See* Ex. 10, at 16.)[4] But this structure is neither clearly-linked by the specification to performing the specified function, nor sufficient to do so. As a result, this "means for" term is indefinite.

The recited function here is very specific: ***initiating*** an inquiry from the apparatus to at least one other apparatus—not just any communication from one apparatus to another. (*See* Shoemake Supp. Decl. ¶ 19.) WSOU identifies as corresponding structure "apparatus A and process 1 of Fig. 13." But as already discussed at the introduction to Section IV in NEC's

---

[4] WSOU made this concession and initial proposal of § 112, ¶ 6 structure on August 19—which was already 14 days after the Local P.R. 4-2 deadline, and therefore untimely. *See* Ex. 11, at 23.

7

opening claim construction brief, Figure 13 and its Apparatus A only disclose a "black box" for what comprises Apparatus A, not any specific structure—including, no specific structure for its annotation "1. Initial contact." (*Id.* ¶¶ 19–20.)  This is a purely functional description that does not disclose any structure at all to a POSITA. (*Id.*)  WSOU also proposes only the following text from the specification as corresponding structure:

> In this non-limiting example, apparatus A 1300 has a requirement to interact with apparatus B 1302 in FIG. 13.  Such a requirement to establish communication may be initiated by, for example, applications and/or utilities executing on apparatus A 1300, user interaction with apparatus A 1300, etc.  In response to this requirement, apparatus A 1300 may send a wireless inquiry to apparatus B 1302.  The wireless inquiry may be sent, for example, utilizing a channel (e.g., an initialization channel) that is known to (e.g., predefined or predetermined) each apparatus.

('213 patent at 19:62–20:4.)  Nothing in this brief passage discloses or clearly links any specific, corresponding structure for performing the claimed "initiating an inquiry" function.  (Shoemake Supp. Decl. ¶ 20.)  This is a functional description that does not disclose any specific hardware, software, algorithm, computer code, instructions, steps, special-purpose processor, or other sufficient structure for performing the specified "initiating an inquiry" function.  (*Id.*)  The vague and generic recitation of "for example, applications and/or utilities" does nothing to identify specific, clearly-linked corresponding structure to perform this function.  (*Id.*)  Further, the recitation of a "channel," such as an initialization channel, also does not solve this lack of disclosure, because that is merely a communication medium between the apparatuses—not what "initiates an inquiry" as the claims require.  (*Id.* ¶ 19.)  And, conspicuously, nothing in this passage mentions an "inquiry" at all.  Instead, all that is mentioned is initiating a "requirement" of Apparatus A to communicate with Apparatus B.  (*Id.* ¶¶ 19–20.)

8

Only **four days** before NEC's claim construction brief originally was due (and **24 days after the P.R. 4-2 disclosure deadline**) WSOU purported to "update" its proposed construction for this term (and all other "means for" terms) by identifying the following additional structure:

> communications module 230 of Fig. 2, memory 330 and processor 300 of Figs. 3, 7A, 8A, 9A, or 11, software-defined radio module 1102 and software modules 1110-1118 of Fig. 12, and steps 1406-1412 of Fig. 14A, and the corresponding portions of the specification at 6:17-30, 6:50-7:22, 8:60-9:5, 17:8-52, 18:4-60, 21:1-3, and 21:15-42

(*See* Ex. 12.)  WSOU apparently made this late disclosure having realized that its original bare recitation from only Figure 13 does not suffice as corresponding structure.  But none of these additional portions of the specification save this claim term from indefiniteness.  As NEC's expert Dr. Shoemake explains, none of this additional proposed structure is clearly-linked or sufficient to perform the recited "initiating" function.  (Shoemake Supp. Decl. ¶¶ 21–22.)  Indeed, none of this additional proposed structure is clearly-linked or sufficient to perform **any** of the recited "means for" functions, whether "initiating" here or the other functions discussed in Sections VII.A.1(b)–(h), *infra*.  Also, these portions of the specification only disclose black box structure without any specific hardware, software, algorithm, computer code, instructions, steps, special-purpose processor, or other sufficient structure for performing the claimed function.  (Shoemake Supp. Decl. ¶ 21.)  As a result, WSOU's eleventh-hour, kitchen sink disclosure of additional proposed structure fails.

For all of these reasons, WSOU's proposed corresponding structure fails.  (*See id.* ¶¶ 18–22.)  Furthermore, no other parts of the specification cure this failure or otherwise disclose clearly-linked, sufficient corresponding structure for performing the function of "initiating an inquiry from the apparatus to at least one other apparatus."  (*Id.*)  This "means for" claim term is therefore indefinite for lack of corresponding structure.

9

### (b)    "means for receiving remote characteristic information into the apparatus" (claim 22)

This phrase appears as element [22.b] of claim 22.  The Parties agree that the specified function for this § 112, ¶ 6 term is "receiving remote characteristic information into the apparatus."  WSOU proposes that the corresponding structure is the same as previously discussed in Section IV.A.1(a), *supra*, except that the structure from Figure 13 is Apparatus A and "process 2."  This structure is neither clearly-linked by the specification to performing the specified function, nor sufficient to do so.  As a result, this "means for" term is indefinite.

The recited function here is very specific: ***receiving remote characteristic information*** into the apparatus—not just any communication from one apparatus to another.  (*See* Shoemake Supp. Decl. ¶ 25.)  WSOU identifies as corresponding structure "apparatus A and process 2 of Fig. 13."  But as already discussed, Figure 13 and its Apparatus A only disclose a "black box" for what comprises Apparatus A, not any specific structure—including, no specific structure for its annotation "2. Remote characteristics."  (*Id.* ¶ 26.)  This is a purely functional description that does not disclose any structure at all to a POSITA.  (*Id.*)  WSOU also proposes only the following text from the specification as corresponding structure:

> Apparatus B 1302 may acknowledge receipt of the inquiry from apparatus A 1300, and may in turn respond with one or more messages accepting the invitation to communicate and containing remote characteristics. Remote characteristics comprise information related to the apparatus with which communication is desired (e.g., apparatus B 1302), and may include information regarding apparatus status and/or environmental conditions proximate to the apparatus.  For instance, apparatus status information may include apparatus communication capabilities and/or preferences, current apparatus power condition, current apparatus operational condition, current communication activity including transports active in the apparatus and a number of messages pending for each active transport, etc.  Information pertaining to environmental conditions may include signals sensed in proximity to the apparatus that may potentially cause interference, communication scheduled in the apparatus, the

> identification of other apparatuses operating in proximity, etc.
> Some or all of this information may be provided in response to the
> inquiry of apparatus A 1300.

('213 patent at 20:4–24.)  Nothing in this brief passage discloses or clearly links any specific,

corresponding structure for performing the claimed "receiving remote characteristic information"

function. (Shoemake Supp. Decl. ¶ 26.)  This is a functional description that does not disclose

any specific hardware, software, algorithm, computer code, instructions, steps, special-purpose

processor, or other sufficient structure for performing the specified "receiving remote

characteristic information" function. (*Id.*)  At most, this passage states that Apparatus B may

"provide[]" remote characteristic information to Apparatus A; it does not identify any specific

structure for *receiving* remote characteristic information into Apparatus A. (*Id.*)

　　　WSOU also belatedly disclosed additional structure from Figures 3, 7A, 8A, 9A, 11, 12,

and 14A, with certain related specification text.  But as NEC's expert Dr. Shoemake explains,

none of this additional structure is clearly linked or sufficient to perform the specified

"receiving" function. (Shoemake Supp. Decl. ¶¶ 27–28.)  As a result, WSOU's late kitchen-sink

disclosure does not save this term from indefiniteness.

　　　For all of these reasons, WSOU's proposed corresponding structure fails. (*See id.* ¶¶ 24–

28.)  Furthermore, no other parts of the specification cure this failure or otherwise disclose

clearly-linked, sufficient corresponding structure for performing the function of "receiving

remote characteristic information into the apparatus." (*Id.*)  This "means for" claim term is

therefore indefinite for lack of corresponding structure.

　　　　　**(c)** **"means for determining local characteristic information in the**
　　　　　　　**apparatus" (claim 22)**

　　　This phrase appears as element [22.c] of claim 22.  The Parties agree that the specified

function for this § 112, ¶ 6 term is "determining local characteristic information in the

apparatus."  WSOU proposes that the corresponding structure is the same as previously discussed in Section IV.A.1(a), *supra*, except that the structure from Figure 13 is Apparatus A and "process 3."  This structure is neither clearly-linked by the specification to performing the specified function, nor sufficient to do so.  As a result, this "means for" term is indefinite.

The recited function here is very specific: ***determining*** local characteristic information in the apparatus.  (*See* Shoemake Supp. Decl. ¶ 31.)  WSOU identifies as corresponding structure "apparatus A and process 3 of Fig. 13."  But as already discussed, Figure 13 and its Apparatus A only disclose a "black box" for what comprises Apparatus A, not any specific structure— including, no specific structure for its annotation "3. Determine local characteristics."  (*Id.* ¶¶ 31–32.)  This is a purely functional description that does not disclose any structure at all to a POSITA.  (*Id.*)  WSOU also proposes only the following text from the specification as corresponding structure:

> Apparatus A 1300 may also determine characteristics pertaining to itself, which are designated local characteristics in FIG. 13. Local characteristics may include all of the information discussed above with respect to remote characteristics, but from the perspective of the initiating apparatus.  While local characteristics are formulated after remote characteristics in the example of FIG. 13, the determination of local characteristics is not limited to this temporal organization.  In particular, the determination of local characteristics may occur before, during or after the receipt of remote characteristics from apparatus B 1302.

('213 patent at 20:25–35.)  Nothing in this brief passage discloses or clearly links any specific, corresponding structure for performing the claimed "receiving remote characteristic information" function.  (Shoemake Supp. Decl. ¶ 32.)  This is a functional description that does not disclose any specific hardware, software, algorithm, computer code, instructions, steps, special-purpose processor, or other sufficient structure for performing the specified "receiving remote characteristic information" function.  (*Id.*)  The vague and generic recitation that "Apparatus A

1300 may also determine characteristics pertaining to itself" does nothing to identify specific, clearly-linked corresponding structure to perform this function.  (*Id.*)  Further, the reference back to "remote characteristic information" does not solve this lack of disclosure, because that portion of the specification fails to provide any, much less all, sufficient structure for determining any of these characteristics that are local to Apparatus A.  (*Id.*)

WSOU also belatedly disclosed additional structure from Figures 3, 7A, 8A, 9A, 11, 12, and 14A, with certain related specification text.  But as NEC's expert Dr. Shoemake explains, none of this additional structure is clearly linked or sufficient to perform the specified "determining" function.  (Shoemake Supp. Decl. ¶¶ 33–34.)  As a result, WSOU's late kitchen-sink disclosure does not save this term from indefiniteness.  For all of these reasons, WSOU's proposed corresponding structure fails.  (*See id.* ¶¶ 30–34.)  Furthermore, no other parts of the specification cure this failure or otherwise disclose clearly-linked, sufficient corresponding structure for performing the function of "determining local characteristic information in the apparatus."  (*Id.*)  This "means for" claim term is therefore indefinite for lack of corresponding structure.

> **(d)** **"means for sending the configuration from the apparatus to the at least one other apparatus" (claim 22)**

This phrase appears as element [22.e] of claim 22.  The Parties agree that the specified function for this § 112, ¶ 6 term is "sending the configuration from the apparatus to the at least one other apparatus."  WSOU proposes that the corresponding structure is the same as previously discussed in Section IV.A.1(a), *supra*, except that the structure from Figure 13 is Apparatus A and "process 5."  This structure is neither clearly-linked by the specification to performing the specified function, nor sufficient to do so.  As a result, this "means for" term is indefinite.

The recited function here is very specific: ***sending the configuration*** from the apparatus to the at least one other apparatus—not just any communication from one apparatus to another. (*See* Shoemake Supp. Decl. ¶ 37.)  WSOU identifies as corresponding structure "apparatus A and process 5 of Fig. 13."  But as already discussed at the introduction to Section IV, *supra*, Figure 13 and its Apparatus A only disclose a "black box" for what comprises Apparatus A, not any specific structure—including, no specific structure for its annotation "5. Transmit to B."  (*Id.* ¶ 38.)  This is a purely functional description that does not disclose any structure at all to a POSITA.  (*Id.*)  WSOU also proposes only the following text from the specification as corresponding structure:

> After formulation of the configuration is complete, the configuration may be sent to apparatus B 1302.  In various embodiments of the present invention, the configuration may be sent to apparatus B 1302 on the initialization channel.

('213 patent at 20:45–48.)  Nothing in these two sentences discloses or clearly links any specific, corresponding structure for performing the claimed "sending the configuration" function. (Shoemake Supp. Decl. ¶ 38.)  This is a functional description that does not disclose any specific hardware, software, algorithm, computer code, instructions, steps, special-purpose processor, or other sufficient structure for performing the specified "sending the configuration" function.  (*Id.*) At most, this passage states that Apparatus A may send remote characteristic information to Apparatus B, perhaps using a configuration channel, but it does not identify any specific structure that does so.  (*Id.*)

WSOU also belatedly disclosed additional structure from Figures 3, 7A, 8A, 9A, 11, 12, and 14A, with certain related specification text.  But as NEC's expert Dr. Shoemake explains, none of this additional structure is clearly linked or sufficient to perform the specified "sending"

function.  (Shoemake Supp. Decl. ¶¶ 39–40.)  As a result, WSOU's late kitchen-sink disclosure does not save this term from indefiniteness.

For all of these reasons, WSOU's proposed corresponding structure fails.  (*See id.* ¶¶ 36–40.)  Furthermore, no other parts of the specification cure this failure or otherwise disclose clearly-linked, sufficient corresponding structure for performing the function of "sending the configuration from the apparatus to the at least one other apparatus."  (*Id.*)  This "means for" claim term is therefore indefinite for lack of corresponding structure.

### (e)   "means for receiving wireless communication in the apparatus"

This phrase appears as element [26.a] of claim 26.  The Parties agree that the specified function for this § 112, ¶ 6 term is "receiving wireless communication in the apparatus."  WSOU proposes that the corresponding structure is the same as previously discussed in Section IV.A.1(a), *supra*, except that the structure from Figure 13 is Apparatus B and "process 1." This structure is not clearly-linked by the specification to performing the specified function.  As a result, this "means for" term is indefinite.  WSOU identifies as corresponding structure "apparatus B and process 1 of Fig. 13."  But as already discussed, Figure 13 and its Apparatus B only disclose a "black box" for what comprises Apparatus B, not any specific structure— including, no specific structure for its annotation "1. Initial contact."  (*Id.* ¶¶ 45–46.)  This is a purely functional description that does not disclose any clearly linked structure to a POSITA. (*Id.*)  WSOU also proposes only the following text from the specification as corresponding structure:

> In response to this requirement, apparatus A 1300 may send a wireless inquiry to apparatus B 1302.
>
> * * * * *
>
> Apparatus B 1302 may acknowledge receipt of the inquiry from apparatus A 1300, and may in turn respond with one or more

> messages accepting the invitation to communicate and containing
> remote characteristics.

('213 patent at 19:64–20:4.)  Nothing in this brief passage clearly links any specific,

corresponding structure for performing the claimed "receiving wireless communication"

function.  (Shoemake Supp. Decl. ¶ 47.)  This is a functional description that does not expressly

identify any specific hardware, software, algorithm, computer code, instructions, steps, special-

purpose processor, or other sufficient structure that receives a wireless communication in

Apparatus B.  (*Id.*)  All that is stated is that a wireless inquiry is sent from Apparatus A to

Apparatus B—not what specific structure receives this inquiry or any other wireless

communication.  (*Id.*)  Further, the second portion of this passage refers to Apparatus B

responding to the inquiry, which would be transmission of a wireless communication, not

reception which is the specified function.  (*Id.*)  And, there is no disclosure of clearly linked,

specific structure for general wireless communications between the apparatuses, including what

structure performs reception in Apparatus B.  (*Id.*)

WSOU also belatedly disclosed additional structure from Figures 3, 7A, 8A, 9A, 11, 12,

and 14A, with certain related specification text.  But as NEC's expert Dr. Shoemake explains,

none of this additional structure is clearly linked to perform the specified "receiving" function.

(Shoemake Supp. Decl. ¶¶ 48–49.)  As a result, WSOU's late kitchen-sink disclosure does not

save this term from indefiniteness.

For all of these reasons, WSOU's proposed corresponding structure fails.  (*See id.* ¶¶ 44–

49.)  Furthermore, no other parts of the specification cure this failure or otherwise disclose

clearly-linked, sufficient corresponding structure for performing the function of "initiating an

inquiry from the apparatus to at least one other apparatus."  (*Id.*)  This "means for" claim term is

therefore indefinite for lack of corresponding structure.

**(f)**     **"means for if the wireless communication includes an inquiry requesting characteristic information, determining characteristic information"**

This phrase appears as element [26.b] of claim 26.  The Parties agree that the specified function for this § 112, ¶ 6 term is "if the wireless communication includes an inquiry requesting characteristic information, determining characteristic information."  This notably is a very specific function, requiring first checking whether the wireless communication includes an inquiry, and only if so, then determining characteristic information.  (*See also* Shoemake Supp. Decl. ¶ 52.)  Further, as has already been discussed, the '213 patent's specification identifies various categories of possible "characteristic information," ('213 patent at 20:9–24), as does claim 26 following its "comprising at least one of" language, (*id.* at 28:1–7.)  As a result, the specification must disclose and clearly link sufficient structure for proposing this very particular function.

However, the specification does not come close to doing so.  Specifically, WSOU proposes that the corresponding structure is the same as previously discussed in Section IV.A.1(a), *supra*, except that the structure from Figure 13 is Apparatus B and "processes 1 and 2."  This structure is neither clearly-linked by the specification to performing the specified function, nor sufficient to do so.  WSOU's proposal first identifies "apparatus B and processes 1 and 2 of Fig. 13."  But as already discussed at the introduction to Section IV, *supra*, Figure 13 and its Apparatus B only disclose a "black box" for what comprises Apparatus B, not any specific structure—including, no specific structure for its annotation "1. Initial contact" or "2. Remote characteristics."  (Shoemake Supp. Decl. ¶¶ 53–54.)  This is a purely functional description that does not disclose any structure at all to a POSITA.  (*Id.*)  Further, these arrows in Figure 13 connote the wireless transmission of different wireless signals—not any sort of determination of characteristic information if there is an inquiry, which is the specific function

here.  (*Id.*)  WSOU also proposes the following text from the specification as corresponding

structure:

> In this non-limiting example, apparatus A 1300 has a requirement
> to interact with apparatus B 1302 in FIG. 13.  Such a requirement
> to establish communication may be initiated by, for example,
> applications and/or utilities executing on apparatus A 1300, user
> interaction with apparatus A 1300, etc.  In response to this
> requirement, *apparatus A 1300 may send a wireless inquiry to
> apparatus B 1302.  The wireless inquiry may be sent, for
> example, utilizing a channel (e.g., an initialization channel) that
> is known to (e.g., predefined or predetermined) each apparatus.*
>
> \* \* \* \* \*
>
> Remote characteristics comprise information related to the
> apparatus with which communication is desired (e.g., apparatus B
> 1302), and may include information regarding apparatus status
> and/or environmental conditions proximate to the apparatus.  For
> instance, apparatus status information may include apparatus
> communication capabilities and/or preferences, current apparatus
> power condition, current apparatus operational condition, current
> communication activity including transports active in the apparatus
> and a number of messages pending for each active transport, etc.
> Information pertaining to environmental conditions may include
> signals sensed in proximity to the apparatus that may potentially
> cause interference, communication scheduled in the apparatus, the
> identification of other apparatuses operating in proximity, etc.
> *Some or all of this information may be provided in response to
> the inquiry of apparatus A 1300.*

('213 patent at 19:64–20:4 and 20:8–24.)  Nothing here discloses, much less clearly links,

sufficient corresponding structure for either resolving "if the wireless communication includes an

inquiry requesting characteristic information" or, if it does, "determining characteristic

information." (Shoemake Supp. Decl. ¶ 55.)  This is instead, once again, a functional description

that does not disclose any specific hardware, software, algorithm, computer code, instructions,

steps, special-purpose processor, or other sufficient structure.  (*Id.*)  In fact, this passage makes

the structure for this "means term" even more problematic—listing many different potential

types of remote characteristics, but giving no guidance whatsoever about how to "determine"

characteristic information about them or what that information would be.  (*Id.*)  As shown by the bolded portions above, all this passage says is that Apparatus A can send an inquiry to Apparatus B, which can then send "some or all" remote characteristic information back in response.  (*Id.*)  However, is no disclosure or clear linking of any structure for the crucial, actual function of determining what that information is if the received communication from Apparatus A is an inquiry requesting this information from Apparatus B.  (*Id.*)

WSOU also belatedly disclosed additional structure from Figures 3, 7A, 8A, 9A, 11, 12, and 14A, with certain related specification text.  But as NEC's expert Dr. Shoemake explains, none of this additional structure is clearly linked or sufficient to perform the specified "determining" function.  (Shoemake Supp. Decl. ¶¶ 56–57.)  As a result, WSOU's late kitchen-sink disclosure does not save this term from indefiniteness.

For all of these reasons, WSOU's proposed corresponding structure fails.  (*See id.* ¶¶ 52–57.)  Furthermore, no other parts of the specification cure this failure or otherwise disclose clearly-linked, sufficient corresponding structure for performing the function of "if the wireless communication includes an inquiry requesting characteristic information, determining characteristic information."  (*Id.*)  This "means for" claim term is therefore indefinite for lack of corresponding structure.

> **(g)** **"means for responding to the inquiry, the response comprising the characteristic information"**

This phrase appears as element [26.c] of claim 26.  The Parties agree that the specified function for this § 112, ¶ 6 term is "responding to the inquiry, the response comprising the characteristic information."  WSOU proposes that the corresponding structure is the same as previously discussed in Section IV.A.1(a), *supra*, except that the structure from Figure 13 is Apparatus B and "process 2."  This structure is neither clearly-linked by the specification to

performing the specified function, nor sufficient to do so.  As a result, this "means for" term is

indefinite.  WSOU identifies as corresponding structure "apparatus B and process 2 of Fig. 13."

But as already discussed at the introduction to Section IV, *supra*, Figure 13 and its Apparatus B

only disclose a "black box" for what comprises Apparatus B, not any specific structure—

including, no specific structure for its annotation "2. Remote characteristics."  (Shoemake Supp.

Decl. ¶¶ 61–62.)  This is a purely functional description that does not disclose any structure at all

to a POSITA.  (*Id.*)  WSOU also proposes only the following text from the specification as

corresponding structure:

> Apparatus B 1302 may acknowledge receipt of the inquiry from
> apparatus A 1300, and may in turn respond with one or more
> messages accepting the invitation to communicate and containing
> remote characteristics.

('213 patent at 19:64–20:4.)  Nothing in this single sentence discloses or clearly links any

specific, corresponding structure for performing the claimed "responding to the inquiry"

function.  (Shoemake Supp. Decl. ¶ 62.)  This is a functional description that does not disclose

any specific hardware, software, algorithm, computer code, instructions, steps, special-purpose

processor, or other sufficient structure of Apparatus B that responds to the inquiry from

Apparatus A, including by sending remote characteristic information back to Apparatus A.  (*Id.*)

All that is stated is that a wireless signal "containing remote characteristics" may be sent

Apparatus B to Apparatus A—not what specific structure performs this response or sends this

information.  (*Id.*)  And, there is no clearly linked, specific structure for general wireless

communications between the apparatuses, including what structure responds or transmits a

wireless signal from Apparatus B to Apparatus A.  (*Id.*)

WSOU also belatedly disclosed additional structure from Figures 3, 7A, 8A, 9A, 11, 12,

and 14A, with certain related specification text.  But as NEC's expert Dr. Shoemake explains,

none of this additional structure is clearly linked or sufficient to perform the specified "responding" function.  (Shoemake Supp. Decl. ¶¶ 63–64.)  As a result, WSOU's late kitchen-sink disclosure does not save this term from indefiniteness.

For all of these reasons, WSOU's proposed corresponding structure fails.  (*See id.* ¶¶ 60–64.)  Furthermore, no other parts of the specification cure this failure or otherwise disclose clearly-linked, sufficient corresponding structure for performing the function of "initiating an inquiry from the apparatus to at least one other apparatus."  (*Id.*)  This "means for" claim term is therefore indefinite for lack of corresponding structure.

>    **(h)**    **"means for receiving further wireless communication in the apparatus, the further wireless communication including a configuration"**

This phrase appears as element [26.d] of claim 26.  The Parties agree that the specified function for this § 112, ¶ 6 term is "receiving further wireless communication in the apparatus, the further wireless communication including a configuration."  WSOU proposes that the corresponding structure is the same as previously discussed in Section IV.A.1(a), *supra*, except that the structure from Figure 13 is Apparatus B and "process 5."  This structure is neither clearly-linked by the specification to performing the specified function, nor sufficient to do so.  As a result, this "means for" term is indefinite.  WSOU identifies as corresponding structure "apparatus B and process 5 of Fig. 13."  But as already discussed at the introduction to Section IV, *supra*, Figure 13 and its Apparatus B only disclose a "black box" for what comprises Apparatus B, not any specific structure—including, no specific structure for its annotation "5. Transmit to B."  (*Id.* ¶¶ 68–69.)  This is a purely functional description that does not disclose any structure at all to a POSITA.  (*Id.*)  WSOU also proposes only the following text from the specification as corresponding structure:

> After formulation of the configuration is complete, the
> configuration may be sent to apparatus B 1302.  In various
> embodiments of the present invention, the configuration may be
> sent to apparatus B 1302 on the initialization channel.

('213 patent at 20:45–48.)  Nothing in this brief passage discloses or clearly links any specific, corresponding structure for performing the claimed "receiving further wireless communication" function.  (Shoemake Supp. Decl. ¶ 69.)  This is a functional description that does not disclose any specific hardware, software, algorithm, computer code, instructions, steps, special-purpose processor, or other sufficient structure that receives a wireless communication in Apparatus B, including receiving a configuration as the wireless communication.  (*Id.*)  All that is stated is that a wireless communication is sent from Apparatus A to Apparatus B—not what specific structure receives this communication.  (*Id.*)  And, there is no disclosure or clearly linking of any specific structure for general wireless communications between the apparatuses, including what structure performs reception in Apparatus B.  (*Id.*)

WSOU also belatedly disclosed additional structure from Figures 3, 7A, 8A, 9A, 11, 12, and 14A, with certain related specification text.  But as NEC's expert Dr. Shoemake explains, none of this additional structure is clearly linked or sufficient to perform the specified "receiving" function.  (Shoemake Supp. Decl. ¶¶ 70–71.)  As a result, WSOU's late kitchen-sink disclosure does not save this term from indefiniteness.

For all of these reasons, WSOU's proposed corresponding structure fails.  (*See id.* ¶¶ 67–71.)  Furthermore, no other parts of the specification cure this failure or otherwise disclose clearly-linked, sufficient corresponding structure for performing the function of "initiating an inquiry from the apparatus to at least one other apparatus."  (*Id.*)  This "means for" claim term is therefore indefinite for lack of corresponding structure.

### 2. The indefinite "computer program code configured to …" § 112, ¶ 6 terms of asserted claims 8 and 24

As discussed in Section IV.A.1, claims 22 and 26 collectively recite an additional eight "means for" terms that are indefinite. Claims 8 and 24 collectively then recite the following additional terms that recite "computer program code configured to" perform the same functions as these indefinite "means for" terms. This is shown in the table below.

| "Means for" terms (claims 22 and 26) | "Computer program code configured to" terms (claims 8 and 24) |
|---|---|
| [22.a] "means for initiating an inquiry from the apparatus to at least one other apparatus" | [8.a] "computer program code configured to initiate an inquiry from an apparatus to at least one other apparatus" |
| [22.b] "means for receiving remote characteristic information into the apparatus" | [8.b] "computer program code configured to receive remote characteristic information into the apparatus" |
| [22.c] "means for determining local characteristic information in the apparatus" | [8.c] "computer program code configured to determine local characteristic information in the apparatus" |
| [22.e] "means for sending the configuration from the apparatus to the at least one other apparatus" | [8.e] "computer program code configured to send the configuration from the apparatus to the at least one other apparatus" |
| [26.a] "means for receiving wireless communication in the apparatus" | [24.a] "computer program code configured to receive wireless communication in an apparatus" |
| [26.b] "means for if the wireless communication includes an inquiry requesting characteristic information, determining characteristic information" | [24.b] "computer program code configured to if the wireless communication includes an inquiry requesting characteristic information, determine characteristic information" |
| [26.c] "means for responding to the inquiry, the response comprising the characteristic information" | [24.c] "computer program code configured to respond to the inquiry, the response comprising the characteristic information" |
| [26.d] "means for receiving further wireless communication in the apparatus, the further wireless communication including a configuration" | [24.d] "computer program code configured to receive further wireless communication including a configuration, the further wireless communication including a configuration" |

|  |  |
|---|---|
|  |  |

As already discussed in Section IV.A.1, the specification does not clearly link any sufficient structure for performing any of these functions—including failing to disclose any computer program code, algorithms, instructions, or other specific steps that qualifies as specific structure for the recited "computer program code configured to" terms.  As a result, the only question is whether each of these "computer program code configured to" terms is, in fact, governed by 35 U.S.C. § 112, ¶ 6.  If they are, then they are indefinite for the reasons already discussed in Section IV.A.1.  As explained below, every single one of these "computer program code configured to" claim terms is, in fact, governed by § 112, ¶ 6.  Because the specification fails to disclose and clearly link a specific computer code algorithm for performing each of these claimed functions—much less every function—each of these claim terms is indefinite.

To start, claim 8's recitation of "computer program code configured to" perform the functions above does not itself connote sufficient structure to perform these functions.  Rather, the code "is defined only by the function that it performs."  *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 615 (E.D. Tex. May 10, 2019).  Similarly, although the claim also recites "at least one apparatus" and "at least one other apparatus," neither component provides additional structure beyond the "code" itself.  *See, e.g.*, *Dyfan v. Target Corp.*, 2020 WL 8617821, at *6 (W.D. Tex. Nov. 25, 2020) (finding that a "mobile device" recited in the asserted claim is "a general-purpose component which, in this case, executes generic 'code'"); *see also id.* at *6 n.4 ("Were the Court to consider 'mobile device' to be sufficient structure for 'code,' then an applicant could simply recite two nonce words— 'processor' and 'code'—together in the claim in order to essentially write the claim in means-

plus-function format without being subject to § 112, ¶ 6.").  Accordingly, each of these claim terms are governed by § 112, ¶ 6.

Because § 112, ¶ 6 applies and the corresponding structure is a special-purpose computer function, the specification must provide an algorithm for the software function.  *Function Media v. Google*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) ("When dealing with a 'special purpose computer-implemented means-plus-function limitation,' we require the specification to disclose the algorithm for performing the function.").  But here, WSOU has identified *no* algorithm in the specification, and there is none.  For this reason, each of these claim terms is indefinite.

Moreover, those portions of the specification WSOU identified for the corresponding "means for" (claims 22) nevertheless fail to disclose and clearly link a specific computer code algorithm for performing each of these claimed functions.  To take one example, for "initiating an inquiry" WSOU cites to portions of the specification stating that "apparatus A 1300 may send a wireless inquiry to apparatus B 1302," that the "wireless inquiry may be sent, for example, utilizing a channel (*e.g.*, an initialization channel)," and that "[a]pparatus B 1302 may acknowledge receipt of the inquiry from apparatus A 1300."  None of these citations, however, actually disclose what an "inquiry" is, how it is "initiated" in apparatus A, or corresponding structures in apparatus A intended to create and send the inquiry.  (*See* Shoemake Supp. Decl. ¶¶ 18–22.)  The same lack of any computer code or other clearly-linked algorithms or instructions is true for the remainder of these "computer program code being configured to" claim terms and their functions.  (*See id.* ¶¶ 23, 29, 35, 42, 50, 58, 65, 72.)  As a result, these terms are indefinite as well.

### 3. The indefinite "the processor being configured to …" § 112, ¶ 6 terms of asserted claim 25

As discussed in Section IV.A.1, claims 22 and 26 collectively recite an additional eight "means for" terms that are indefinite. Claim 25 then recites the following additional terms that recite "the processor being configured to" perform the same functions as six of the indefinite "means for" terms. This is shown in the table below.

| "Means for" terms (claims 22 and 26) | "The processor being configured to" terms (claim 25) |
|---|---|
| [22.f] and [26.e] "means for implementing the configuration in the apparatus" | [25.f] "the processor being configured to implement the configuration in the apparatus" |
| [22.g] and [26.f] "means for establishing communication between the apparatus and at least one other apparatus in accordance with the configuration" | [25.g] "the processor being configured to establish communication between the apparatus and at least one other apparatus in accordance with the configuration" |
| [26.a] "means for receiving wireless communication in the apparatus" | [25.a] "the processor being configured to receive wireless communication in an apparatus" |
| [26.b] "means for if the wireless communication includes an inquiry requesting characteristic information, determining characteristic information" | [25.b] "the processor being configured to if the wireless communication includes an inquiry requesting characteristic information, determine characteristic information" |
| [26.c] "means for responding to the inquiry, the response comprising the characteristic information" | [25.c] "the processor being configured to respond to the inquiry, the response comprising the characteristic information" |
| [26.d] "means for receiving further wireless communication in the apparatus, the further wireless communication including a configuration" | [25.d] "the processor being configured to receive further wireless communication including a configuration, the further wireless communication including a configuration" |

As already discussed in Section IV.A.1, the specification does not clearly link any sufficient structure for performing any of these functions—including failing to disclose any special-purpose processor and associated computer program code, algorithms, instructions, or

other specific steps that qualifies as specific structure for the recited "the processor being configured to" terms.  As a result, the only question is whether each of these "the processor being configured to" terms is, in fact, governed by 35 U.S.C. § 112, ¶ 6.  If they are, then they are indefinite for the reasons already discussed in Section IV.A.1.  As explained below, every single one of these "the processor being configured to" claim terms is, in fact, governed by § 112, ¶ 6.  Because the specification fails to disclose and clearly link a special purpose processor for performing each of these claimed functions—much less every function—each of these claim terms is indefinite.

To start, claim 25's recitation of a "processor being configured to" perform the any of the six functions above does not itself connote sufficient structure to perform these functions.  Rather, the processor is a general-purpose component that, in this case, executes generic "code." *Dyfan*, 2020 WL 8617821, at *6; *see also id.* at *6 n.4 (observing that "processor" is a "nonce word" triggering consideration under § 112, ¶ 6).  As a result, the general-purpose processor recited alone cannot be sufficient structure.  *See e.g.*, *Net MoneyIn, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1366–67 (Fed. Cir. 2008) ("[W]e have 'consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor.'" (quoting *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008))).  Accordingly, each of these claim terms is governed by § 112, ¶ 6.  The disputed terms of claim 25 of the '213 patent are very similar to those of claim 24, discussed immediately above.  *See* Section IV.A.2, *supra*.  The only difference for these terms is that claim 25 recites "the processor being configured to" perform the recited functions above, whereas claim 24 recites "computer program code configured to" perform these very same functions. This difference is immaterial, though, because a processor is configured through computer

program code that runs an algorithm in order to perform the configuration and to execute the recited functions 1 through 5 above.  (*See* Shoemake Supp. Decl. ¶¶ 51, 59, 66, 73.)  As a result, the above limitations reciting "the processor being configured to" are § 112, ¶ 6 limitations that require a corresponding, clearly-linked and sufficient algorithm disclosed by the specification.

There is no such algorithm or program code as already explained earlier for claim 24. *See* Section IV.A.1, *supra*.  These § 112, ¶ 6 terms of claim 25 are therefore indefinite because they lack any specific computer code, algorithm, or other clearly-linked corresponding structure, as already explained for claim 24.  *See id.*

Dated: September 10, 2021                    Respectfully submitted,

                                             */s/ Keith B. Davis*
                                             Hilda C. Galvan
                                             Lead Attorney
                                             Texas State Bar No. 00787512
                                             Email:  hcgalvan@jonesday.com
                                             Keith B. Davis
                                             Texas State Bar No. 24037895
                                             Email:  kbdavis@jonesday.com
                                             JONES DAY
                                             2727 N. Harwood Street, Suite 500
                                             Dallas, TX 75201-1515
                                             Telephone:  (214) 220-3939
                                             Facsimile:  (214) 969-5100

                                             Maxwell A. Fox
                                             Email:  mfox@jonesday.com
                                             JONES DAY
                                             Okura Prestige Tower 2-10-4 Toranomon
                                             Minato-ku, Tokyo 105-0001, Japan
                                             Telephone:  (813) 6800-1876
                                             Facsimile:  (813) 5570-1520

                                             Stuart Wesley Yothers
                                             Email:  syothers@jonesday.com
                                             JONES DAY
                                             250 Vesey Street New York, NY 10281
                                             Telephone:  (212) 326-3893
                                             Facsimile:  (212) 755-7306

                                             *Attorneys for Defendant NEC
                                             Corporation*

## <u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of this document has been served on all counsel of record on September 10, 2021 by CM/ECF for those counsel who have appeared in the above-captioned matters.


By:  */s/ Keith B. Davis*
     Keith B. Davis